**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NETGEAR, INC. | ) |
| | ) |
| Plaintiff, | )    Case No.: |
| | ) |
| v. | ) |
| | )    **JURY TRIAL DEMANDED** |
| NETLOGIC SOLUTION LTD., ROUTERENGR, | ) |
| JARS ROUTER, SOUTH WINDTECH ROUTER, | ) |
| THE NETGEAR HUB, WORLD OF ROUTERS, | ) |
| NEX SOLUTION, ROUTERFORYOU.COM and | ) |
| JOHN DOE 1-5 | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff NETGEAR, Inc. ("NETGEAR" or "Plaintiff") by and through its undersigned counsel, complains of defendants Netlogic Solution Ltd.'s, Routerengr's, Jars Router's, South Windtech Router's, The Netgear Hub's, World of Routers', Nex Solution, Routerforyou.com and John Does' 1-5 (collectively, "Defendants") conduct and alleges upon information and belief as follows:

## NATURE OF THE ACTION

1. NETGEAR seeks injunctive relief and monetary damages for Defendants' trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. § 1051, *et seq*., and violations of state law arising from Defendants' improper use of NETGEAR's trademarks through online commerce sites for the purposes of unfair and deceptive business practices.

2. Defendants' conduct has produced and, unless enjoined by this Court, will continue to produce a likelihood of consumer confusion and deception, to the irreparable injury of

NETGEAR. As a result of Defendants' actions, NETGEAR is suffering a loss of the enormous goodwill that NETGEAR has created in its trademarks and is losing profits from lost sales of products.

3.      This action seeks permanent injunctive relief and damages for Defendants' infringement of NETGEAR's intellectual property rights.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over the subject matter of this Complaint pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), as these claims arise under the Trademark Laws of the United States.

5.      This Court has personal jurisdiction over Defendants because, on information and belief, Defendants have misrepresented the nature of products to residents of the State of Massachusetts and this District; because Defendants have caused injury to NETGEAR's trademarks in the State of Massachusetts and this District; because Defendants practice the unlawful conduct complained of herein, in part, within the State of Massachusetts and this District; because Defendants regularly conduct or solicit business within the State of Massachusetts and this District; because Defendants regularly and systematically direct electronic activity into the State of Massachusetts and this District with the manifest intent of engaging in business within the State of Massachusetts and this District, including the sale and/or offer for sale of products to Internet users within the State of Massachusetts and this District.

6.      Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District.

**PARTIES**

7.      Plaintiff NETGEAR is a Delaware corporation with its principal place of business in San Jose, California.  NETGEAR is a computer networking company that produces networking hardware for consumers, businesses, and service providers (the "NETGEAR Products"). NETGEAR turns ideas into innovative networking products that connect people, power businesses, and advance the way we live.

8.      Defendant Netlogic Solution Ltd. is an entity who, upon information and belief, operates the website netlogicsolutionltd.com and the email address info@netlogicsolutionltd.com for the purpose of promoting, soliciting, and selling products to consumers throughout the United States including, but not limited to, consumers in Massachusetts, California, and New York. According to Defendant's website, Netlogic Solution Ltd.'s principal place of business is 12562 Mirkwood Lane, Waldorf, MD 20601. Netlogic Solution Ltd. and Routerengr share the same physical address.

9.      Defendant Routerengr is an entity who, upon information and belief, operates the website routerengr.com and the email address info@routerengr.com  for the purpose of promoting, soliciting, and selling products to consumers throughout the United States including, but not limited to, consumers in Massachusetts, California, and New York.  According to Defendant's website, Routerengr's principal place of business is 12562 Mirkwood Lane, Waldorf, MD 20601. Netlogic Solution Ltd. and Routerengr share the same physical address.

10.      Defendant Jars Router is an entity who, upon information and belief, operates the website jarsrouter.com and the email address info@jarsrouter.com for the purpose of promoting, soliciting, and selling products to consumers throughout the United States including, but not limited to, consumers in Massachusetts, California, and New York.  According to Defendant's website, Jars Router's principal place of business is 2 Lakeview Drive, A5, Peekskill, NY 10566.

11.     Defendant South Windtech Router is an entity who, upon information and belief, operates the website southwindtechrouter.site and the email address info@southwindtechrouter.site for the purpose of promoting, soliciting, and selling products to consumers throughout the United States including, but not limited to, consumers in Massachusetts, California, and New York.  According to Defendant's website, South Windtech Router's principal place of business is 503 Terry Francine Street, San Francisco, CA 94158. South Windtech Router, The Netgear Hub and The World of Routers share the same physical address.

12.     Defendant The Netgear Hub is an entity who, upon information and belief, operates the website thenetgearhub.com and the email address info@thenetgearhub.com for the purpose of promoting, soliciting, and selling products to consumers throughout the United States including, but not limited to, consumers in Massachusetts, California, and New York.  According to Defendant's website, The Netgear Hub's principal place of business is 503 Terry Francine Street, San Francisco, CA 94158. South Windtech Router, The Netgear Hub, and The World of Routers share the physical address. The Netgear Hub and The World of Routers also share the same email address.

13.     Defendant The World of Routers is an entity who, upon information and belief, operates the website worldofrouters.com and the email address info@thenetgearhub.com for the purpose of promoting, soliciting, and selling products to consumers throughout the United States including, but not limited to, consumers in Massachusetts, California, and New York.  According to Defendant's website, The World of Routers' principal place of business is 503 Terry Francine Street, San Francisco, CA 94158. South Windtech Router, The Netgear Hub, and The World of Routers share the physical address. The Netgear Hub and The World of Routers also share the same email address.

4

14.    The Defendant Nex Solution is an entity who, upon information and belief, operates the websites netgaerroutershelp.shop, orbisetuphelp.shop, orbisetups.shop, and netgeaersetup.shop, and the email address harpinder@nexgroup.us for the purpose of promoting, soliciting, and selling products to consumers throughout the United States including, but not limited to, consumers in Massachusetts, California, and New York.  Defendant's principal place of business is 1621 Central Avenue, Cheyenne, WY 82001.

15.    The Defendant Routerforyou.com is an individual or entity yet to be identified who operates the website routerforyou.com and email address info@routerforyou.com for the purposes of promoting, soliciting, and selling products to consumers throughout the United States including, but not limited to, consumers in Massachusetts, California, and New York. According to Routerforyou.com's website, Routerforyou.com is located at 2501 Peaceful Lane, Rineyville, KY 40162.

16.    John Does 1-5 are individuals or entities yet to be identified who are described in the Complaint as operating websites for the purposes of promoting, soliciting, and selling products to consumers throughout the United States including, but not limited to, consumers in Massachusetts, California, and New York.

17.    Upon information and belief, Defendants, including the John Doe Defendants, operate or have operated additional websites beyond those specifically identified herein that similarly purport to offer NETGEAR Products and services under the NETGEAR Marks. Defendants create, abandon, and replace such websites in a deliberate effort to evade detection, circumvent enforcement actions, and conceal their identities behind the anonymity afforded by the internet. Upon further information and belief, the John Doe Defendants are alter egos of, or are owned, controlled, or operated by, the same individuals or entities who own, control, or operate

one or more of the named Defendants, and the John Doe Defendants' separate corporate or entity forms, to the extent they exist, are mere instrumentalities used to perpetuate the fraudulent scheme alleged herein. The John Doe Defendants' identities will be ascertained through discovery in this action.

18.     Upon information and belief, Defendants are operating as a common enterprise and/or are engaged in a civil conspiracy to infringe NETGEAR's intellectual property rights and defraud consumers. The existence of this common enterprise and/or conspiracy is evidenced by, among other things: (a) multiple Defendants share the same physical addresses, including Netlogic Solution Ltd. and Routerengr, which share an address at 12562 Mirkwood Lane, Waldorf, MD 20601, and South Windtech Router, The Netgear Hub, and World of Routers, which share an address at 503 Terry Francine Street, San Francisco, CA 94158; (b) The Netgear Hub and World of Routers share the same email address, info@thenetgearhub.com; (c) all Defendants employ a substantially identical modus operandi, including the use of the NETGEAR Marks to impersonate NETGEAR, the operation of fraudulent websites purporting to offer NETGEAR Products and services, and the collection of payments from consumers for products and services that are never delivered; and (d) Defendants operate a coordinated network of websites designed to maximize the diversion of NETGEAR customers and to evade detection by cycling through multiple domains and entities. Each Defendant knowingly participated in, facilitated, and furthered the objectives of this common scheme, and each Defendant is jointly and severally liable for the acts of the other Defendants committed in furtherance thereof.

## FACTS

### A. NETGEAR's Trademark Usage

19.    The U.S. Patent and Trademark Office ("USPTO") has issued Reg. No. 2,124,219, 5,760,720, and 5,434,123 for use of the NETGEAR mark on, *inter alia*, "computer network interconnection hardware, namely, routers, bridges, hubs, and switches…" (hereinafter, the "NETGEAR Marks").

20.    The NETGEAR Marks have been in continuous use since at least 1996.  Said registrations are in full force and effect, and the NETGEAR Marks are incontestable pursuant to 15 U.S.C. § 1065.

21.    NETGEAR advertises, distributes, and sells its products to consumers under the NETGEAR Marks.

22.    NETGEAR has also acquired common law rights in the use of the NETGEAR Marks throughout the United States.

23.    NETGEAR's federal trademark registrations were duly and legally issued, are valid and subsisting, and constitute *prima facie* evidence of NETGEAR's exclusive ownership of the NETGEAR Marks.

24.    NETGEAR has invested significant time, money, and effort in advertising, promoting, and developing the NETGEAR Marks throughout the United States and the world.  As a result of such actions, NETGEAR has established substantial goodwill and widespread recognition in its NETGEAR Marks, and the Marks have become associated exclusively with NETGEAR and its products by both customers and potential customers, as well as the general public at large.

25.     To create and maintain such goodwill among its customers, NETGEAR has taken substantial steps to ensure that products bearing the NETGEAR Marks are of the highest quality. As a result, the NETGEAR Marks have become widely known and are recognized throughout the United States and the world as a symbol of high quality products.

**B.  Defendants' Infringing and Improper Conduct**

26.     Defendants operate the websites, including, but not limited to, netlogicsolutionltd.com, routerengr.com, jarsrouter.com, southwindtechrouter.site, thenetgearhub.com, worldofrouters.com, routerforyou.com, netgaerroutershelp.shop, orbisetuphelp.shop, netgeaersetup.shop, and orbisetups.shop (collectively, the "Websites") to deceive customers into believing they are authorized to sell NETGEAR products and offer NETGEAR services.  At the top of each website, Defendants advertise that they are "NETGEAR Authorized Resellers." Representative examples of these claims are reproduced below:







27.     Defendants further impersonate NETGEAR customer support agents and authorized NETGEAR representatives through the use of various email addresses, including

info@netlogicsolutionltd.com, info@routerengr.com, info@jarsrouter.com, info@southwindtechrouter.site, info@thenetgearhub.com, and info@routerforyou.com, to mislead customers into believing they are communicating with authorized NETGEAR representatives when they are not. Having established this false pretense, Defendants induce unknowing customers to purchase additional purported NETGEAR Products and services from Defendants.

28.    Defendants also use the NETGEAR Marks in their domain names and on their Websites in furtherance of their scheme to defraud unknowing customers. For example, Defendants registered the domain names: netgaerroutershelp.shop, netgeaersetup.shop, orbisetuphelp.shop, and orbisetups.shop. Defendants use the NETGEAR Marks to lure unsuspecting consumers to their Websites, offering purported NETGEAR products and services for which consumers pay but never receive.

29.    Upon information and belief, Defendants divert customers looking for NETGEAR products and support services from NETGEAR to the Websites. The unsuspecting customers do not know that they have been diverted to Defendants' Websites and call center and thus engage with Defendants as if they are NETGEAR.

30.    Defendants intentionally deceive customers by holding themselves out to be authorized representatives of NETGEAR.

31.    Furthermore, Defendants have sold and are currently selling products bearing the NETGEAR Marks on the Websites.

32.    NETGEAR has never authorized or otherwise granted Defendants permission to sell NETGEAR Products and services.

33.     Defendants represent that the NETGEAR Products and services they offer for sale on the Websites are "genuine" despite the fact that they do not provide any NETGEAR Products and services to customers after receiving payment. Instead, it is Defendants' intent to defraud customers out of money by trading on the goodwill of the NETGEAR brand and NETGEAR Marks.

34.     Upon information and belief, Defendants utilize third-party payment processing services, including PayPal, to receive payments from consumers for the purported sale of NETGEAR Products and services. Defendants' use of such payment platforms is deliberate and calculated to obscure the identity of the recipients of consumer funds, render such funds more difficult to trace, and further facilitate Defendants' scheme to defraud consumers. By directing payments through PayPal and similar services rather than traditional merchant accounts, Defendants seek to avoid the transparency and accountability measures associated with conventional payment processing and to frustrate efforts by NETGEAR and law enforcement to identify and recover funds obtained through Defendants' fraudulent conduct.

35.     Upon information and belief, Defendants do not maintain any refund or dispute resolution process, and their use of third-party payment platforms such as PayPal is designed to insulate Defendants from chargebacks, refund requests, and other consumer protection mechanisms that would otherwise be available through traditional merchant accounts. As a result, consumers who remit payment to Defendants for purported NETGEAR Products and services are deprived of meaningful recourse to recover their funds.

36.     Upon information and belief, Defendants utilize multiple and/or rotating PayPal accounts and other third-party payment accounts to further obscure the flow of funds, evade

platform-level fraud detection, and frustrate efforts to freeze or recover misappropriated consumer payments.

37.     Unlike legitimate NETGEAR authorized resellers, Defendants do not maintain verifiable merchant accounts, do not provide transaction receipts identifying a legitimate business entity, and do not offer consumers any means of verifying the authenticity of the transaction. Defendants' reliance on PayPal and similar peer-to-peer or informal payment channels is inconsistent with the operation of a bona fide retail business and is instead indicative of a fraudulent scheme designed to collect consumer payments while evading accountability.

38.     Defendants further exploit the trust and familiarity that consumers associate with established payment platforms such as PayPal to lend a false veneer of legitimacy to their fraudulent transactions, thereby increasing the likelihood that consumers will complete purchases and submit sensitive personal and financial information to Defendants.

39.     Defendants' coordinated use of PayPal and similar third-party payment services across multiple Websites further evidences the existence of a common enterprise, as the use of a uniform payment methodology across ostensibly separate entities is consistent with centralized control and a shared fraudulent purpose.

40.     Defendants' advertisement of NETGEAR Products and use of the NETGEAR Marks provides customers with false assurance that the products and services they purchase from Defendants are authentic and thus conform with NETGEAR's high standards and work as intended. However, after Defendants convince customers that they are authorized NETGEAR agents and obtain credit card information, personal information, and payment, Defendants do not provide any products or services.

41.    In addition to harm to consumers, the impersonation and "sale" of non-genuine NETGEAR Products and services directly harms NETGEAR. When consumers purchase NETGEAR Products and services from Defendants, they expect to receive the products and services that they purchased.  Instead, their image of NETGEAR is diminished because they do not receive any products and services. Consumers are deceived and in turn believe that NETGEAR failed to provide them with the high-quality products and support that NETGEAR is known for. NETGEAR's opportunity to sell genuine, high-quality products to those consumers may be then lost forever. As a result of Defendants' conduct, NETGEAR suffers substantial and irreparable harm to its brand, image, business, and goodwill with the public.

42.    For example, on or about April 21, 2025, May 14, 2025, and October 2, 2025, NETGEAR customers were deceived by Defendant orbisetups.shop. Defendant falsely represented that it was NETGEAR and induced customers to provide their names, email addresses, and NETGEAR router serial numbers.

43.    Defendants use the NETGEAR name and the NETGEAR Marks as part of a scheme to impersonate NETGEAR and trade on the goodwill of the NETGEAR brand, including by branding their Websites and customer communications with the NETGEAR Marks and holding themselves out as "NETGEAR" or "NETGEAR Authorized" support. Defendants' unauthorized use is intended to, and does, mislead NETGEAR customers into paying Defendants for purported NETGEAR products and services. Upon information and belief, after obtaining customers' payment and personal and financial information, Defendants do not provide the genuine NETGEAR products and services for which customers paid.

44.    Defendants' unauthorized use of the NETGEAR Marks and marketing, promotion, and purported sale of "NETGEAR" products and services intentionally misrepresents to

consumers that Defendants are NETGEAR, NETGEAR employees, and/or authorized NETGEAR agents, and that Defendants' offerings are approved, sponsored by, or affiliated with NETGEAR, when they are not.

45.    Defendants' unauthorized use of the NETGEAR Marks in this manner is likely to cause, and has caused, consumer confusion as to source, sponsorship, affiliation, or approval. This is likely to cause (and has caused) consumer confusion and disappointment when, for example, consumers purchase products and services from Defendants and learn that the products and services they purchased are not genuine and authentic NETGEAR products and services and are not provided as promised.

46.    Upon information and belief, each Defendant had actual knowledge of NETGEAR's registered trademarks, including the NETGEAR Marks, prior to commencing the infringing conduct alleged herein. Defendants' actual knowledge is evidenced by, among other things, Defendants' deliberate and systematic use of the NETGEAR Marks on the Websites, Defendants' representations that they are "NETGEAR Authorized Resellers," and Defendants' use of the NETGEAR Marks in domain names, email addresses, and customer communications. Defendants' infringement of the NETGEAR Marks was and continues to be knowing, intentional, willful, and in reckless disregard of NETGEAR's rights, thereby entitling NETGEAR to enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

### C. The Likelihood of Confusion and Injury Caused by Defendants' Actions

47.    Defendants' actions of impersonating NETGEAR in order to sell non-genuine products and services bearing the NETGEAR Marks to unknowing NETGEAR customers harms NETGEAR.

48.     Defendants' actions substantially harm NETGEAR by purposefully diverting customers looking for NETGEAR's website to their own.

49.     Defendants' unauthorized actions have substantially harmed NETGEAR by misleading NETGEAR customers into sending substantial payments meant for NETGEAR to Defendants' bank account rather than NETGEAR.

50.     As evidenced above, the harm to NETGEAR and its customers is not theoretical. Defendants' conduct intentionally deceives customers.  Defendants are impersonating NETGEAR and holding themselves out as authorized NETGEAR agents, when they are not.

51.     Defendants' advertisement and sale of products and services bearing the NETGEAR Marks has caused – and is likely to continue causing – consumer confusion by representing to consumers that the NETGEAR Products and services offered by sale by Defendants are "authentic" and "genuine" when they are not.

52.     Defendants' advertisement and sale of products and services bearing the NETGEAR Marks has caused – and is likely to continue causing – consumer confusion and disappointment regarding NETGEAR's sponsorship or approval of those products creating a false designation of origin in the minds of consumers.

53.     Defendants' actions substantially harm NETGEAR's goodwill and reputation when consumers learn that the products and services bearing the NETGEAR Marks they have purchased from Defendants are not authentic and do not exist.

54.     Defendants' conduct results in consumer confusion as well as the dilution of NETGEAR's goodwill and trade name as consumers are not receiving the products and services they believe they are purchasing.

55. Defendants' conduct as described herein results in the lessening of sales of genuine, properly advertised NETGEAR Products and services to the detriment of NETGEAR.

56. As a result of Defendants' actions NETGEAR is suffering a loss of the enormous goodwill it created in the NETGEAR Marks.

57. Defendants continue to commit the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to NETGEAR's irreparable harm.

58. Monetary damages alone are insufficient to compensate NETGEAR for the injuries caused by Defendants' conduct. The full extent of consumer confusion resulting from Defendants' impersonation of NETGEAR and unauthorized use of the NETGEAR Marks cannot be quantified. The harm to NETGEAR's brand reputation and the goodwill associated with the NETGEAR Marks is inherently difficult, if not impossible, to measure in monetary terms. Moreover, Defendants' use of anonymous and rotating websites, third-party payment platforms, and other measures designed to conceal their identities and the scope of their operations renders it impossible for NETGEAR to calculate the total volume of diverted sales and consumer losses attributable to Defendants' conduct. Accordingly, NETGEAR will suffer irreparable harm absent injunctive relief from this Court.

### COUNT I
### Trademark Infringement in Violation of 15 U.S.C. § 1114

59. NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60. This is a claim for federal trademark infringement under 15 U.S.C. § 1114.

61. The acts of Defendants alleged herein constitute the use in commerce, without the consent of NETGEAR, of a reproduction, counterfeit, copy, or colorable imitation of the NETGEAR Mark in connection with the sale, offering for sale, distribution, or advertising of

goods, which use is likely to cause confusion or mistake, or to deceive consumers, and therefore infringe NETGEAR's rights in the NETGEAR Marks, all in violation of the Lanham Act.

62.    Defendants' infringing activities are likely to cause, are actually causing, and are willful and intended to cause, confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of such products, and constitute trademark infringement under 15 U.S.C. § 1114. By virtue of Defendants' operation as a common enterprise and/or civil conspiracy as alleged herein, each Defendant is jointly and severally liable for the trademark infringement committed by every other Defendant in furtherance of the common scheme.

63.    Defendants' use of the NETGEAR Marks in the advertisement or sale of NETGEAR Products demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with the NETGEAR Marks, thereby causing immediate, substantial, and irreparable injury to NETGEAR.

64.    As a direct and proximate result of Defendants' actions, NETGEAR has been, and continues to be, damaged by Defendants' activities and conduct.

65.    Defendants have profited thereby, and, unless their conduct is enjoined, NETGEAR's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages.  Accordingly, NETGEAR is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT II
**False Designation of Origin, Description, and Representation Under 15 U.S.C. § 1125(a)**

66.    NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

17

67. This is a claim for false designation of origin, false descriptions, and false representations under 15 U.S.C. § 1125(a).

68. NETGEAR engages in interstate activities designed to promote its goods and services sold, as well as the goodwill associated with the NETGEAR Marks, throughout the United States.

69. The NETGEAR Marks have been, and will continue to be, known throughout the United States as identifying and distinguishing NETGEAR products.

70. By using the NETGEAR Marks and a confusingly similar trademark to impersonate NETGEAR and advertise and offer for sale NETGEAR's products under false pretenses, Defendants are engaging in unfair competition, false advertising, and/or falsely representing sponsorship by, affiliation with, or connection to NETGEAR and its goods and services in violation of 15 U.S.C. § 1125(a).

71. By advertising or promoting products using the NETGEAR Marks as alleged herein, Defendants are misrepresenting the nature, characteristics, and qualities of their goods in violation of 15 U.S.C. § 1125(a).

72. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the NETGEAR Marks, thereby causing immediate, substantial, and irreparable injury to NETGEAR. By virtue of Defendants' operation as a common enterprise and/or civil conspiracy as alleged herein, each Defendant is jointly and severally liable for the false designation of origin committed by every other Defendant in furtherance of the common scheme.

73.    By offering to sell, selling, and advertising products under the NETGEAR Mark, as alleged herein, NETGEAR is entitled to a judgment of three times its damages and Defendants' ill-gotten profits, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

74.    As a direct and proximate result of Defendants' actions, NETGEAR has been, and continues to be, damaged by Defendants' activities and conduct.  Defendants have profited thereby, and unless their conduct is enjoined, NETGEAR's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages.  Accordingly, NETGEAR is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT III
### Civil Conspiracy

75.    NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

76.    Defendants entered into and engaged in a civil conspiracy, the purpose and effect of which was to infringe NETGEAR's intellectual property rights, impersonate NETGEAR, and defraud consumers through the unauthorized use of the NETGEAR Marks and the operation of the Websites. In furtherance of this conspiracy, Defendants committed the overt acts described herein, including the creation and operation of fraudulent websites purporting to offer NETGEAR Products and services, the impersonation of NETGEAR and its authorized representatives, the collection of payments from consumers for products and services that were never delivered, and the use of shared addresses, email accounts, and payment processing methods to coordinate and conceal their unlawful activities.

77.    Each Defendant had knowledge of, and knowingly and willfully participated in, the conspiracy and the overt acts committed in furtherance thereof. Each Defendant's participation was a proximate cause of the injuries sustained by NETGEAR and consumers.

19

78.    As a result of Defendants' conspiracy, each Defendant is jointly and severally liable for all damages, lost profits, and other injuries sustained by NETGEAR as a result of the acts committed by any Defendant in furtherance of the conspiracy.

**COUNT IV**
**Unfair Competition Under G.L. c. 93A**

79.    NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

80.    NETGEAR and Defendants are in the conduct of trade or commerce within the meaning of G.L. c. 93A.

81.    As detailed above, Defendants' continuing trademark infringement and impersonation of NETGEAR constitutes an unfair and deceptive business practice.

82.    Defendants' acts have irreparably harmed NETGEAR and, unless enjoined, will continue to do so in a manner affording NETGEAR no adequate remedy at law.

83.    Upon information and belief, Defendants have specifically targeted consumers in the Commonwealth of Massachusetts through the Websites and have caused Massachusetts consumers to suffer actual monetary losses by inducing such consumers to remit payment for purported NETGEAR Products and services that were never delivered. Defendants' deceptive conduct has caused and continues to cause substantial harm to Massachusetts consumers and to the competitive marketplace within the Commonwealth.

84.    Defendants have refused to desist from these wrongful acts, and therefore Defendants have indicated that they intend to continue their unlawful conduct, unless restrained by this Court.

## COUNT V
### Violations of California Business and Professions Code § 17200 et seq.

85. NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

86. The California Unfair Competition Law, codified at Business and Professions Code sections 17200, et seq., prohibits any unlawful, unfair, or fraudulent business act or practice.

87. Defendants' acts, omissions, misrepresentations, and/or practices constitute unlawful, unfair, and/or fraudulent business acts and practices within the meaning of California Business & Professions Code §§ 17200, et seq.

88. Defendants' misconduct has a tendency and likelihood to deceive members of the public.

89. The foregoing acts and practices have caused substantial harm to NETGEAR.

90. As a direct and proximate cause of the unlawful, unfair, and fraudulent acts and practices of Defendants, NETGEAR has lost money and suffered injury in fact and damage in the form of lost sales revenue, fees, and other costs.

91. Upon information and belief, Defendants have specifically targeted consumers in the State of California through the Websites and have caused California consumers to suffer actual monetary losses by inducing such consumers to remit payment for purported NETGEAR Products and services that were never delivered. Defendants' deceptive conduct has caused and continues to cause substantial harm to California consumers and to the competitive marketplace within the State of California.

92. Defendants' conduct constitutes fraud, suppression and/or concealment, and misrepresentation of material facts known to them, with the intent of inducing reliance and thereby depriving NETGEAR of property and/or legal rights or otherwise causing injury. Defendants'

conduct subjected NETGEAR to unjust hardship in conscious disregard of the Plaintiff's rights, such as to constitute malice, oppression, or fraud under California Civil Code § 3294, thereby entitling NETGEAR to an award of exemplary and punitive damages in an amount appropriate to punish or set an example of Defendants.

**COUNT VI**
**Violations of N.Y. General Business Law § 349**

93.    NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

94.    N.Y. General Business Law § 349 prohibits any deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.

95.    Defendants' acts, omissions, misrepresentations, and/or practices constitute deceptive acts or practices within the meaning of N.Y. General Business Law § 349.

96.    Defendants' misconduct has a tendency and likelihood to deceive members of the public.

97.    The foregoing acts and practices have caused substantial harm to NETGEAR.

98.    As a direct and proximate cause of the unlawful, unfair, and fraudulent acts and practices of Defendants, NETGEAR has lost money and suffered injury in fact and damage in the form of lost sales revenue, fees, and other costs.

99.    Upon information and belief, Defendants have specifically targeted consumers in the State of New York through the Websites and have caused New York consumers to suffer actual monetary losses by inducing such consumers to remit payment for purported NETGEAR Products and services that were never delivered. Defendants' deceptive conduct has caused and continues to cause substantial harm to New York consumers and to the competitive marketplace within the State of New York.

22

100.    Defendants' conduct constitutes fraud, suppression and/or concealment, and misrepresentation of material facts known to them, with the intent of inducing reliance and thereby depriving NETGEAR of property and/or legal rights or otherwise causing injury.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff NETGEAR, Inc. prays for judgment in its favor and against Defendants providing the following relief:

1.    Finding that, (i) as to Count I, Defendants' unauthorized promotion and sale of NETGEAR products and services infringes on NETGEAR's registered trademark, in violation of 15 U.S.C. § 1114; (ii) as to Count II, Defendants' unauthorized promotion and sale of NETGEAR products and services constitutes a false designation of origin, description and representation in violation of 15 U.S.C. § 1125(a); (iii) as to Count III, Defendants engaged in a civil conspiracy to infringe NETGEAR's intellectual property rights and defraud consumers; and (iv) as to Counts IV, V, and VI, Defendants' actions constitute a violation of Massachusetts, California and New York State law, resulting in Defendants, their officers, agents, servants, employees, attorneys, and any other persons or entities acting in concert or participation with Defendants, including but not limited to the Websites or any other website, website host, website administrator, domain registrar, or internet service provider, being preliminarily and permanently enjoined from:

   a.    Using or attempting to use, any of NETGEAR's intellectual property, including, but not limited to, the NETGEAR Marks or any other confusingly similar mark or domains;

23

b. Advertising, selling, or taking any steps to sell, any products bearing the NETGEAR Marks in an improper manner;

c. Engaging in any activity constituting unfair competition with NETGEAR; and

d. Inducing, assisting, or abetting any other person or entity in engaging in or performing any of the business activities described in the paragraphs above.

2. Award NETGEAR its damages suffered as a result of Defendants' acts and treble said damages as provided by law pursuant to 15 U.S.C. § 1117, M.G.L. c. 93A, California Business and Professions Code § 17200 et seq., and/or N.Y. General Business Law § 349.

3. Award NETGEAR Defendants' profits as a result of Defendants' acts and treble said damages as provided by law pursuant to 15 U.S.C. § 1117, M.G.L. c. 93A, California Business and Professions Code § 17200 et seq, and N.Y. General Business Law § 349;

4. Award NETGEAR statutory damages of $2,000,000.00 per mark pursuant to 15 U.S.C. § 1117(c);

5. Award NETGEAR exemplary and punitive damages in an appropriate amount;

6. Enter judgment that Defendants' acts of infringement have been knowing and willful;

7. Award NETGEAR its reasonable attorneys' fees in bringing this action as allowed by law;

8. Award NETGEAR pre-judgment and post-judgment interest in the maximum amount allowed under the law;

9. Award NETGEAR the costs incurred in bringing this action; and

24

10.    An accounting of all revenues, profits, and proceeds derived by Defendants from their infringing and fraudulent activities, and disgorgement of all ill-gotten gains obtained by Defendants as a result of the conduct alleged herein;

11.    An order requiring Defendants to surrender to NETGEAR or destroy all materials, including but not limited to websites, marketing materials, business cards, signage, and any other items bearing the NETGEAR Marks or any confusingly similar marks;

12.    An order directing the transfer to NETGEAR or cancellation of all domain names registered or used by Defendants that incorporate the NETGEAR Marks or any confusingly similar variations thereof, pursuant to 15 U.S.C. § 1125(d) and/or the Court's equitable authority;

13.    Award NETGEAR such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

NETGEAR hereby requests a trial by jury on all causes of action so triable.


Dated:    April 16, 2026                                   Respectfully submitted,


                                                  */s/ Morgan Nickerson*
                                                  Morgan T. Nickerson (BBO #667290)
                                                  morgan.nickerson@klgates.com
                                                  Shaina M. Lefkowitz (BBO #694338)
                                                  shaina.lefkowitz@klgates.com
                                                  K&L Gates LLP
                                                  One Congress Street
                                                  Suite 2900
                                                  Boston, MA 02114
                                                  (617) 261-3100
                                                  (617) 261-3175

                                                  *Attorneys for NETGEAR Inc.*